UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| Satmodo, LLC, | Case No.: 17-cv-0192-AJB-NLS |
|---|---|
| Plaintiff, | **ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION TO DISMISS (Doc. No. 17);** |
| v. | |
| Whenever Communications, LLC, dba Satellitephonestore.com and Henna Blanco, | |
| Defendants. | |

Before the Court is defendant Whenever Communications, LLC, dba Satellitephonestore.com and Henna Blanco's motion to dismiss the first amended complaint. (Doc. No. 17.) The Court largely **DENIES** the motion, only **GRANTING IN PART** the motion to dismiss plaintiff's UCL "fraudulent" claim, request for nonrestitutionary disgorgement under the UCL, and Satmodo's request for injunctive relief from defendants participating in online search advertising.

## I. BACKGROUND

This case's procedural history and factual background were detailed in the Court's April 14, 2017 order on Defendants' previous dismissal motion. (Doc. No. 15 at 2–3.) The Court incorporates that history as though set out here, and will only highlight details pertinent to the instant motion.

In the April 14, 2017 order adjudicating defendants' dismissal motion, (Doc. No. 15), the Court dismissed the following claims: computer fraud and abuse act

1

(CFAA), California's comprehensive computer data access and fraud act (CDAFA), the "unlawful" prong of the unfair competition law (UCL), and intentional interference with prospective economic relations. (*Id.* at 18.) The Court denied dismissing the "unfair" prong under the UCL. (*Id.* at 16.) The Court granted plaintiff leave to amend, and plaintiff filed the First Amended Complaint (FAC). (Doc. No. 16.) Defendants then filed the instant motion. (Doc. No. 17.)

## II. LEGAL STANDARDS

A Rule 12(b)(6) motion to dismiss tests a complaint's legal sufficiency. Fed. R. Civ. P. 12(b)(6). The Court must accept the complaint's allegations as true and construe all reasonable inferences in favor of the nonmoving party, but is not required to accept "legal conclusions" as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009); *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). To avoid a dismissal at this stage, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); Fed. R. Civ. P. 8(a)(2) (stating a party's pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."). In addition, complaints alleging fraud must satisfy Rule 9(b)'s heightened pleading requirements, particularly stating "the time, place[,] and specific content of the false representations as well as the identities of the parties to the misrepresentation." Fed. R. Civ. P. 9(b); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

## III. DISCUSSION

Defendants move to dismiss Satmodo's FAC arguing (1) the Court lacks subject matter jurisdiction over the claims, (2) the FAC fails to plead fraud with particularity, and (3) the FAC does not state a claim for relief. (Doc. No. 17-1.)

### 1. The Court Has Subject Matter Jurisdiction

Defendants argue the Court lacks subject matter jurisdiction (SMJ) because the FAC does not satisfy the amount-in-controversy requirement. (Doc. No. 17-1 at 2.) Defendants maintain the amount-in-controversy "would be between $756 . . . and $1008 for the entire

2

period alleged." (Doc. No. 17-1 at 3.) Satmodo maintains the Court has SMJ under federal question jurisdiction and satisfies the amount-in-controversy requirement.

To satisfy diversity jurisdiction, the controversy amount must exceed $75,000. 28 U.S.C. § 1332(a). For federal question jurisdiction, the civil action must arise under "the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Satmodo's CFAA claim arises under 18 U.S.C. § 1030(g), as stated in the FAC. (Doc. No. 16 at 2.) Thus, the Court has jurisdiction over the case through federal question jurisdiction. Because the Court finds jurisdiction exists under the CFAA claim, the Court need not discuss the amount-in-controversy requirement. Accordingly, the Court **DENIES** defendants' motion to dismiss for lack of subject matter jurisdiction.

## 2. The FAC Meets Rule 9(b)'s Heightened Pleading Requirements

In its previous order, the Court found that Satmodo's claims "alleges a unified course of fraudulent conduct" and thus are subject to Federal Rule of Civil Procedure 9(b)'s heightened pleading requirements. (Doc. No. 15 at 5.) Defendants argue that the FAC still fails to allege fraud with particularity. (Doc. No. 17-1 at 3.) A pleading satisfies Rule 9(b) if it identifies "the who, what, when, where, and how" of the misconduct charged. *Vess*, 317 F.3d at 1106.

Satmodo alleges the FAC contains the "who" requirement by alleging that "Henna Blanco" and "Whenever Communications, LLC" are the parties who acted "without authority" or who "exceeded authorized access." (Doc. No. 16 ¶¶ 2–3.) Satmodo also tied both defendants to the IP addresses it claims were involved in the click scheme. (*Id.* ¶ 34.) Next, Satmodo alleges the FAC satisfies the "what" and "how" requirements by explaining the alleged scheme:

> Defendants intentionally sought out Plaintiff's paid ads, repeatedly clicking on them to present the false impression that they were intended customers, all to their direct benefit in order to obtain *increased* sales while actually *lowering* its market costs to do so due to the ultimate absence of a major competitor on the market . . . .

3

(*Id.* ¶ 21.) Satmodo also maintains the FAC establishes the "where" requirement as it "identified several specific IP addresses known to be directly tied to the named Defendants." (*Id.* ¶ 27, 34.) In the FAC, Satmodo included specific IP addresses linked to both Blanco and the corporation across multiple cities and states including San Diego, Florida, and Las Vegas—"All cities are near or around where Whenever Communications has offices in the corresponding state, and Plaintiff has been informed and believes that Defendant, HENAA (sic) BLANCO also maintains or frequents a residence in or around each of these cities." (*Id.* ¶ 27, 34.) Last, Satmodo states the "when" requirement is satisfied by allegations that the conduct took place "nearly every day" between 2016 and 2017. (*Id.* ¶ 20, 34, 48–51.) In the sampling Satmodo provided, specific dates range from May 2016 to April 2017. (*Id.* ¶ 34.)

Regarding the sampling Satmodo provided in ¶ 34, defendants argue that "Plaintiff cannot comply with Rule 9(b) by merely offering a sample of the alleged fraudulent conduct." (Doc. No. 17-1 at 3.) This assertion is unsupported by law. The Ninth Circuit has stated Rule 9(b)'s particularity requirement can be met through use of sampling. *Edeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998–99 (9th Cir. 2010) ("In our view, use of representative examples is simply one means of meeting the pleading obligation."); *Frazier ex rel. U.S. v. Iasis Healthcare Corp.*, 392 Fed. App'x. 535, 537 (9th Cir. 2010) ("Although it is not mandatory that [Plaintiff] provide representative examples, such examples would go a long way in providing the necessary particularity under Rule 9(b).") District courts have also found sampling or providing examples is sufficient. *United States ex rel. Brooks v. Trillium Community Health Plan, Inc.*, No. 6:14–cv–1424–MC, 2017 WL 2805863, at *2 (D. Ore. June 28, 2017) ("Representative examples are one way of meeting the particularity requirement.").

Defendants next argue that the FAC fails Rule 9(b) because it does not identify the "proxy servers that automatically rotated IP addresses," "the automated means to cause fraudulent clicks," or how the "IP addresses . . . had been masked through the use of rotating proxy servers." (Doc. No. 17-1 at 3 (citing Doc. No. 16 ¶¶ 24–25, 30).) However,

4

Courts have never held that a complaint must allege such specific assertions. At this stage, the Court is required to take all of Satmodo's allegations as true. *Iqbal*, 556 U.S. at 664. Satmodo is only required to identify "the circumstances of the alleged fraud so that defendants can prepare an adequate answer." *Warshaw v. Xoma Corp.*, 74 F.3d 995, 960 (9th Cir. 1996) (quoting *Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir. 1994), cert. denied, 516 U.S. 810 (1995)). Accordingly, the Court finds the FAC meets Rule 9(b)'s heightened pleading requirements and thus **DENIES** defendant's motion to dismiss on these grounds.

### 3. The FAC States a Claim for Relief

Defendants re-assert their previous dismissal arguments that the FAC fails to state a claim for relief under the (a) CFAA, (b) CDAFA, (c) Interference with Contract, and (d) UCL. (Doc. No. 17-1.)

#### *a. CFAA*

Defendants argue "this claim for relief does not cure the defects the court identified in response to the first motion." (*Id.* at 4.) In its previous order, the Court found Satmodo sufficiently pled improper access by alleging it blocked various IP addresses associated with defendants, that defendants circumvented the blocks, and that Satmodo's counsel notified defendants in writing demanding that their actions stop. (Doc. No. 15 at 9.) However, the Court ultimately dismissed this cause of action because Satmodo "failed to adequately plead the threshold element that Defendants accessed Plaintiff's ***computers***." (*Id.* at 10 (emphasis in original).) Satmodo alleges it has cured the Court's concern, properly alleging access to Satmodo's website, computers, and server. (Doc. No. 19 at 18.) The FAC states that defendants "accessed Plaintiff's website, computers, and servers hosting the website by producing invalid clicks . . . being directed to Plaintiff's website, computers and servers . . . ." (Doc. No. 16 ¶ 39.)

Specifically, defendants' state the claim fails because Satmodo included in the FAC access dates that occurred before access was revoked by the cease and desist letter. (Doc. No. 16 ¶ 34.) Satmodo sent the cease and desist letter around September 2016, thus defendants argue that inclusion of access dates prior to that date are improper.

5

(Doc. No. 17-1 at 5.) While the FAC does include access dates prior to 9/2016, it also includes many dates after access was revoked—and is noted as being merely a sampling. (Doc. No. 16 ¶ 34.) Thus, this objection is without merit.[1]

Defendants next object stating "Plaintiff has not alleged how it can revoke access to the search provider's platform." (Doc. No. 17-1 at 5.) Defendants state the "cases which based a claim on the revocation of access concern the Plaintiff's own website, not use of a third-party's search platform. Defendants continue to assert that the theory of revoking access to a non-party's site . . . unduly expands the scope of this criminal statute . . . ." (*Id.*) However, again, at this stage in the proceedings, the Court must take Satmodo's allegations as true. *Iqbal*, 556 U.S. at 664. Resolution on this issue is more appropriately suited for summary judgment, after the parties have had a chance to conduct discovery.

Defendants also contend that "Plaintiff has also not pled 'damage' in the manner specified by the Order . . . ." (Doc. No. 17-1 at 5.) This Court's prior order held Satmodo had improperly pled CFAA damages under § 1030(a)(5)(A)-(C), stating "Plaintiff must allege facts that demonstrate that their data was destroyed, their computer system was harmed, or there was an inability to access their own computer data." (Doc. No. 15 at 11.) However, "district courts in the Ninth Circuit have expressly held that, under the CFAA, 'it is not necessary for data to be physically changed or erased to constitute damage to that data.'" *NovelPoster v. Javitch Canfield Group*, 140 F. Supp. 3d 954, 962 (N.D. Cal. Nov. 3, 2014) (citing *Multiven, Inc. v. Cisco Sys., Inc.*, 725 F. Supp. 2d 887, 894–95 (N.D. Cal. July 20, 2010)).

"Damage" is defined under the CFAA as "any impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8). A

---

[1] Defendants also argue that the "temporal limitation on the claim" shows Satmodo has not alleged "more than $5,000 in damages and that the court lacks jurisdiction . . . ." (Doc. No. 17-1 at 5.) However, as noted earlier, the Court has federal question jurisdiction here.

plaintiff must show there was an "impairment to the . . . availability of data." See 18 U.S.C. § 1030(e)(8); *see also*, *Cassetica Software, Inc. v. Computer Sciences Corp.*, No. 09–cv–00003, 2009 WL 1703015, at *3 (N.D. Ill. June 18, 2009) (holding that a plaintiff alleges damage under the CFAA where he alleges that defendant's conduct "caused a diminution in the completeness or usability" or "affected the availability" of data). The use of term "integrity" in the statute to define damage requires "some diminution in the completeness or usability of data or information on a computer system." *Resdev v. Lot Builders*, No. 6:04–CV–1374ORL31DAB, 2005 WL 1924743, at *5 (M.D. Fla. Aug. 10, 2005).

Here, Satmodo maintains the FAC "adequately pled damage under the CFAA." (Doc. No. 19 at 19.) The Court agrees. Taking Satmodo's allegations as true, defendants "affected the availability of data" by fraudulently clicking on Satmodo's ads, causing the ads to be excluded from search engine's programs which advertise its products. (*See* Doc. No. 16 ¶ 42.) Defendants plausibly also "caused a diminution in the completeness or usability" of data through the click scheme because Satmodo's ads were no longer viewable to actual customers once the daily limit had been met from the fraudulent clicks. (*See id.*) This meant Satmodo could no longer receive complete or usable data from legitimate clicks, and prospective customers could no longer receive complete or usable data from Satmodo—the "availability of data" was impaired from both sides. This argument is not entirely novel—a Florida district court mused that diverting future leads or potential customers may sufficiently show damages under the CFAA. *Trademotion, LLC v. Marketcliq, Inc.*, 857 F. Supp. 2d 1285, 1292 (M.D. Fla. Mar. 2, 2012).

Thus, the Court finds—at this stage—Satmodo has adequately pled an "impairment to the integrity or availability of data, a program, a system, or information" as required under CFAA and **DENIES** defendants' motion to dismiss this claim.

### b. CDAFA

Defendants allege the FAC commits the same egregious errors as the complaint did, namely, by failing to properly allege "access and disruption of computer services" as required under the CDAFA. (Doc. No. 17-1 at 6.) Defendants also state that the FAC "fails

7

to allege any damage to Plaintiff's computers or data." (*Id.*) Satmodo argues they have pled disruption, access, and damages. (Doc. No. 19 at 20–21.)

The FAC alleges violations of four subsections of CDAFA: § 502(c)(1), (3), (5), and (7), (Doc. No. 18 ¶¶ 48–51), which provide a person is liable if he:

> (1) Knowingly accesses and without permission alters, damages, deletes, destroys, or otherwise uses any data, computer, computer system, or computer network to either (A) devise or execute any scheme or artifice to defraud, deceive, or extort, or (B) wrongfully control or obtain money, property or data.
> . . .
> (3) Knowingly and without permission uses or causes to be used computer services.
> . . .
> (5) Knowingly and without permission disrupts or causes the disruption of computer services or denies or causes the denial of computer services to an authorized user of a computer, computer system, or computer network.
> . . .
> (7) Knowingly and without permission accesses or causes to be accessed any computer, computer system, or computer network.

Defendants argue Satmodo's theory that defendants violated search engine and advertising contracts' terms and conditions through the click scheme does not amount to a violation under CDAFA subsections (1), (5), and (7) as there was no access or disruption. (Doc. No. 17-1 at 6.)

"In contrast to the CFAA, the California statute does not require unauthorized access. It merely requires knowing access." *United States v. Christensen*, 828 F.3d 763, 789 (9th Cir. 2015). "What makes that access unlawful is that the person 'without permission takes, copies, or makes use of' data on the computer." *Id.* (citing Cal. Penal Code § 502(c)(2)). "A plain reading of the statute demonstrates that its focus is on unauthorized taking or use of information." *Id.* "Access is defined as to gain entry to, instruct . . . or communicate with, the logical, arithmetical, or memory function resources of a computer, computer system, or computer network." *Id.* (citing Cal. Penal Code § 502(b)(1)) (internal quotations omitted). "Access" also "includes logging into a database

8

with a valid password and subsequently taking, copying, or using the information in the database improperly." *Id.*

Taking Satmodo's allegations as true, defendants accessed Satmodo's computers "by logging onto the search engine website" and "producing invalid clicks on Plaintiff's paid advertisements appearing on search engine pages, which resulted in the redirection of Defendants' to Plaintiff's website and servers." (Doc. No. 19 at 20 (citing FAC ¶ 47).) If the non-hacked use of data (such as an employee with a valid password taking or using information improperly) is a violation, then defendants' non-hacked, but improper, use of Satmodo's data is also, at least plausibly, a violation. Thus, the Court finds Satmodo has—at this stage—properly pled "access."

Although defendants are correct that access and disruption are related, § 502(c)(5) does not include access as an element. Courts have held that lawful access can still disrupt a computer service or system under § 502(c)(5). *NovelPoster*, 140 F. Supp. 3d at 966–67 (allowing a § 502(c)(5) claim based on access gained through using valid passwords and not hacking); *Weingand v. Harland Fin. Solutions, Inc.*, No. 11-cv-03109-EMC, 2012 WL 2327660 (N.D. Cal. June 19, 2012) (granting leave to assert a CDAFA claim when access was gained through valid log-in information); *People v. Childs*, 220 Cal. App. 4th 1079 (2013) (affirming a conviction even when defendant's access and use of computer system was authorized).

In the latter case, Childs, a system administrator, manipulated the system to give himself sole administrative access. *Id.* at 1082–93. The Court held the CDAFA is not limited to hackers, but "may properly be applied to an employee who uses his or her authorized access to a computer system to disrupt or deny computer services to another lawful user." *Id.* at 1104. Here, even if defendants lawfully accessed Satmodo's system, defendants can still be liable for a § 502(c)(5) violation because, as alleged, defendants disrupted Satmodo's system by producing invalid clicks, causing Satmodo to exceed their daily marketing budgeting, and consequently removing them from the marketplace and

9

from valid consumers' eyes. (Doc. No. 19 ¶ 50.) Thus, the Court finds the FAC also states a valid claim under § 502(c)(5).

### c. Contract Interference

Defendants argue that the Court should dismiss this claim outright without consideration because it was not alleged in Satmodo's original complaint. (Doc. No. 17-1 at 7.) In granting leave to amend, the order stated, "Plaintiff *may* address the deficiencies noted herein by filing an amended complaint . . . ." (*Id.* (emphasis added).) However, the Court did not limit Satmodo to only addressing the deficiencies with the dismissed claims and nothing more. *See Grier v. Brown*, 230 F. Supp. 2d 1108, 1111–12 (N.D. Cal. Nov. 6, 2002) ("While the Court directed Plaintiffs to address the deficiencies in the First Amended Complaint, no limitations were placed on the types of amendments that could be made.").

The Federal Rules and the Ninth Circuit's policy is that amendments should be "freely granted" with "extraordinary liberality," unless there is unfair prejudice or bad faith. Fed. R. Civ. P. 15(a); *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990); *Martinez v. Newport Beach City*, 125 F.3d 777, 785 (9th Cir. 1997), *overruled in part on other grounds*, *Green v. City of Tucson*, 255 F.3d 1086, 1093 (9th Cir. 2001). Here, defendants have made no showing of undue prejudice or bad faith, and the Court finds none. Thus, the Court finds no reason to outright dismiss the claim.

Defendants maintain that this claim "does not comply with Rule 9(b)." (Doc. No. 17-1 at 7.) This claim, like the others, is subject to Rule 9(b)'s heightened pleading requirements because it relies on the overall theory that defendants acted fraudulently. However, as stated above, the FAC adequately pleads the "the who, what, when, where, and how" of the misconduct charged. *Vess*, 317 F.3d at 1106.

Last, defendants argue Satmodo fails to plead all of the claim's elements. (Doc. No. 17-1 at 7.) The elements for intentional interference with contractual relations are: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of

the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990).

Satmodo's pleading meets the elements. Satmodo has shown it has a contract with a third party: "Plaintiff had and has ongoing contractual relationships with multiple search providers . . . ." (Doc. No. 16 ¶ 57). The FAC shows that defendants knew of the contracts' existence: "Defendants, being in the same industry and providing similar ads with the same search providers, including, were and are aware of these contractual relationships and their general terms." (*Id.* ¶ 58.) Although defendants argue this proves constructive knowledge rather than actual knowledge, defendants cite no case law stating constructive knowledge is prohibited to prove this element. Satmodo states that defendant's intentionally acted to interfere with the contract: "Defendants' conduct as alleged herein was intended to disrupt the performance of these contracts. . . ." (*Id.* ¶ 60.)

It is clear that causation is pled, although defendants argue otherwise, because Satmodo's theory rests on the fact that defendants' click scheme was a substantial factor in causing the contractual breach. Satmodo alleges the contracts were actually disrupted: "Plaintiff's performance under these contracts had been more burdensome and costly, and Plaintiff's ability [to] receive the full benefits that would otherwise have been expected by the contracting parties had been irreparably disrupted and impaired." (*Id.* ¶ 61.) And finally, Satmodo pleads they were damaged as they had to pay for fraudulent clicks, investigative costs and fees to dispute the fraudulent clicks, revenue lost, and sales from lost potential customers. (*Id.* ¶¶ 59, 61.) The Court finds Satmodo adequately pled this theory, thus the Court **DENIES** defendants' motion to dismiss it.

### d. UCL

Defendants request the Court dismiss Satmodo's allegations under the "unlawful" and "fraudulent" prongs of the UCL, as well as dismiss Satmodo's request for damages and an injunction. (Doc. No. 17-1 at 9.)

11

17-cv-0192-AJB-NLS

### *i. Unlawful Business Practice*

Defendants argue the "unlawful" claim be dismissed as the FAC failed to allege an underlying violation of the law. (*Id.*) In the FAC, Satmodo based its UCL "unlawful" claim on violations of the CFAA and CDAFA. The Court's prior order held "[s]ince Plaintiff has not pled these [CFAA or CDAFA] claims adequately, it follows that Plaintiff has failed to provide an independent violation to state a claim under the 'unlawful' prong of the UCL." (Doc. No. 15 at 15.)

"By proscribing any unlawful business practice, the UCL borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Alvarez v. Chevron Corp.*, 656 F.3d 925, 933 n.8 (9th Cir. 2011) (alteration and internal quotation marks omitted). "Virtually any law—federal, state or local—can serve as a predicate for an action under [the UCL]." *Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal. App. 4th 700, 718 (2001). Because the Court now finds the FAC does state a claim under both the CFAA and the CDAFA, the "unlawful" prong of the UCL is satisfied. Thus, the Court **DENIES** defendants' motion to dismiss this claim.

### *ii. Fraudulent Business Practice*

Next, defendants argue that although Satmodo abandoned this claim in its opposition to the prior dismissal motion—as noted in the Court's prior dismissal order, (Doc. No. 15 at 14 n. 7)—Satmodo re-alleges it in the FAC. (Doc. No. 17-1 at 9.) Defendants state "this prong of the statute is limited to claims alleging deception of the public." (*Id.*) Satmodo makes no argument as to why this claim should not be dismissed.

To state a fraudulent claim under the UCL, "it is necessary only to show that members of the public are likely to be deceived" by the business practice or advertising at issue. *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009) (quotation marks and citation omitted). "California case law clearly establishes that a UCL violation for fraudulent business practices is distinct from common law fraud and does not require a plaintiff to plead and prove the elements of a tort." *Kowalsky v. Hewlett-Packard Co.*, 771 F. Supp. 2d 1156, 1159 (N.D. Cal. Apr. 15, 2011) (listing cases).

Here, the FAC fails to show how members of the public are likely to be deceived by defendants' click scheme. The only allegations Satmodo specifically pled regarding defendants' fraudulent actions are conclusory. Satmodo alleges the click scheme "constitutes a fraudulent scheme or course of conduct designed to harm Plaintiff and benefit Defendants" and that they are entitled to relief because defendants had "fraudulent business acts or practices." (Doc. No. 16 ¶¶ 68, 69.) The deception theory may be based on the general allegation that members of the public did not see Satmodo's ads at all because they had been clicked away by defendants. However, this theory is tenuous and is not specifically pled in the complaint. Thus, the Court finds the FAC fails to state a claim for the fraudulent prong of the UCL, **GRANTS** defendants' motion as to this claim, and **DISMISSES** it.

### *iii. Unfair Business Practice Damages*

Defendants also urge the Court to dismiss the damages portion of the "unfair" prong, as the Court previously held "Plaintiff is not entitled to recover damages or nonrestitutionary disgorgement under the UCL and is limited to injunctive relief." (Doc. No. 17-1 at 9.) Satmodo argues they have sought appropriate restitution and injunctive relief. (Doc. No. 19 at 25.) In the FAC, Satmodo requests "restitution to the Plaintiff of all sums unlawfully collected by Defendants, at the Plaintiff's expense, since the beginning of 2016. . . ." (Doc. No. 16 ¶ 13.)

While restitution is an appropriate remedy under the UCL, nonrestitutionary disgorgement is not. "The California Supreme Court has held that nonrestitutionary disgorgement is akin to a damages remedy: relief that is not allowed under the UCL." *Theme Promotions, Inc. v. News America Marketing FSI*, 546 F.3d 991, 1009 (9th Cir. 2008); *Korea Supply Co. v. Lockheed Martin Corp.*, 131 Cal. Rptr. 2d 29, 42–44 (2003).

Similar to *Korea Supply Co.*, the remedy Satmodo seeks "closely resembles a claim for damages" and is not a permitted form of recovery. *Korea Supply Co.*, 131 Cal. Rptr. at 43 ("As one court has noted: 'Compensation for a lost business opportunity is a measure of damages and not restitution to the alleged victims.'" (citing *MAI Systems Corp. v. UIPS*,

856 F. Supp. 538, 542 (N.D. Cal. 1994))). Thus, defendants are correct that this type of remedy is inappropriate relief under the UCL. The Court also **GRANTS** defendants' motion and **DISMISSES** this damages portion of Satmodo's claim for relief.

### *iv. Injunctive Relief*

Satmodo requests an injunction from two acts. (Doc. No. 16 ¶ 15.) First, Satmodo requests an injunction forbidding any continuation of the click scheme. (*Id.*) Second, Satmodo also requests defendants be enjoined from "bidding on or placing any online search advertisements for satellite phone sales and rentals. . . ." (*Id.*) Defendants argue the Court should dismiss Satmodo's second request for injunctive relief, arguing it is unsupported in the complaint. (Doc. No. 17-1 at 9.) Satmodo counters that the FAC adequately alleges the click scheme and injunctive relief is sought to cease those actions. (Doc. No. 19 at 25.)

To have standing to pursue injunctive relief, a plaintiff must allege facts to show a "real and immediate threat of repeated injury." *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974). A plaintiff can do this by showing the harm is part of a pattern of sanctioned conduct. While the Court can see the immediate and continuing harm apparent in the click scheme—and indeed defendants do not move to dismiss this aspect of Satmodo's injunctive relief—the Court cannot find any immediate threat of injury to Satmodo by defendants bidding on or placing their own advertisements in online search engines. To have this Court permanently enjoin defendants from advertising their business, irrespective of any alleged fraudulent behavior, would be an extraordinary remedy. The Court finds the FAC does not support this request for injunctive relief. Thus, the Court **GRANTS** defendants' motion to dismiss this type of relief.

## IV. CONCLUSION

Thus, the Court **DENIES IN PART AND GRANTS IN PART** defendants' motion to dismiss. (Doc. No. 17.)

The Court **DENIES** defendants' motion as to Satmodo's (1) CFAA, (2) CDAFA, (3) contractual interference, and (4) UCL "unlawful" and "unfair" claims.

The Court **GRANTS** defendants' motion to dismiss (1) the UCL "fraudulent" prong, finding Satmodo failed to state a claim that the public was deceived by the alleged click scheme, (2) Satmodo's claim to recover nonrestitutionary disgorgement under the UCL, and (3) Satmodo's request for injunctive relief from defendants "bidding on or placing any online search advertisements for satellite phone sales and rentals . . . ." (Doc. No. 16 ¶ 15(b).)

**IT IS SO ORDERED.**

Dated: December 8, 2017

Hon. Anthony J. Battaglia
United States District Judge