UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SATMODO, LLC,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>WHENEVER COMMUNICATIONS,<br>LLC, et al.,<br><br>　　　　　　　　Defendants. | Case No.: 3:17-cv-192-AJB-NLS<br><br>**ORDER ON JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE NO. 1**<br><br>**[ECF NO. 51]** |

Before the Court is the parties' Joint Motion for Determination of Discovery Dispute No. 1. ECF Nos. 51-52. Plaintiff later submitted a supplemental declaration, to which Defendants object. ECF Nos. 53, 56. As discussed below, the motion to compel is **GRANTED IN PART** and **DENIED IN PART**.

**I.     INTRODUCTION**

This case involves two direct competitors in the business of selling satellite phones. Plaintiff's complaint alleges the Defendants engaged in a click-fraud[1] scheme to eliminate

---

[1] "'Click fraud' generally refers to the practice of clicking on an Internet advertisement for the sole purpose of forcing the advertiser to pay for the click. Because advertisers only pay when someone clicks through to their website, artificial clicks can be very costly to advertisers. Click fraud includes the use of illicit practices such as spyware, browser hijacking software, and other 'bots' or 'non-human

Plaintiff's paid advertising from appearing in response to internet searches. *See* ECF No. 16 (First Amended Complaint). Following extensive motion practice regarding the pleadings, early discovery, and subpoenas (*see* ECF Nos. 5, 17, 26, 38, 40), the parties are now fully engaged in discovery.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 26 permits discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Information need not be admissible to be discoverable. *Id.* Once the propounding party establishes that the request seeks relevant information, "[t]he party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Superior Commc'ns v. Earhugger, Inc.*, 257 F.R.D. 215, 217 (C.D. Cal. 2009); *see Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) (requiring defendants "to carry heavy burden of showing why discovery was denied").

"The 2015 amendments to Rule 26(b)(1) emphasize the need to impose 'reasonable limits on discovery through increased reliance on the common-sense concept of proportionality.'" *Roberts v. Clark Cty. Sch. Dist.*, 312 F.R.D. 594, 603 (D. Nev. 2016) (internal citation omitted). The fundamental principle of amended Rule 26(b)(1) is "that lawyers must size and shape their discovery requests to the requisites of a case." *Id.* Both discovery and Rule 26 are intended to provide parties with "efficient access to what

---

traffic.' Such practices result in lower sales conversion rates for advertisers because the leads are false—they do not come from actual buyers interested in purchasing the advertised products." *FindWhat Inv'r Group v. FindWhat.com*, 658 F.3d 1282, 1291–92 (11th Cir. 2011).

is needed to prove a claim or defense, but eliminate unnecessary or wasteful discovery." *Id.*

The Court has broad discretion in determining relevancy for discovery purposes. *Surfvivor Media Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005); *see U.S. Fidelity and Guar. Co. v. Lee Investments L.L.C.*, 641 F.3d 1126, 1136 (9th Cir. 2011) ("District courts have wide latitude in controlling discovery, and [their] rulings will not be overturned in the absence of a clear abuse of discretion." (internal quotation and citations omitted)). To the extent that the discovery sought is "unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive," the court is directed to limit the scope of the request. Fed. R. Civ. P. 26(b)(2). Limits should also be imposed where the burden or expense outweighs the likely benefits. *Id.* How and when to so limit discovery, or to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," remains in the court's discretion. Fed. R. Civ. P. 26(c)(1).

### III. DISCUSSION

Plaintiff propounded three forms of discovery: special interrogatories, demand for inspection, and requests for production of documents. ECF No. 51. Plaintiff moves to compel further responses to special interrogatories and requests for production, as well as inspection and imaging of Defendants' computing devices (computers, phones, tablets, etc.) for forensic analysis. ECF No. 51-1 at 1-2. Defendant argues that the requests are overbroad and outside the proper scope of discovery, and instead of inspection of the devices, proposes an alternative "live test." *Id.* at 19.

### A. Special Interrogatories

Plaintiff issued special interrogatories to Defendants seeking to identify all the "computing devices" used by Defendants, their employees or independent contractors, or

otherwise used to click on one of Plaintiff's ads (Nos. 1-4)[2], the operating system on each device (No. 5),[3] and a list of all present and former employees and independent contractors (Nos. 8-9).[4] ECF No. 51-1 at 3. Defendants initially refused to respond and instead stated they would conduct their own investigation. *Id.* at 4. Defendants later supplemented their responses to direct the Plaintiff to a list that purportedly "represented an inventory of the company IP addresses at each location … and the IP addresses for employees who used their own devices for business purposes … compiled by Greg Winter, an IT professional." (hereafter, the "Winter List") ECF No. 51 at 7.

---

[2] Special Interrogatories 1-3 state:
   Identify each COMPUTING DEVICE
   [1] within YOUR possession, custody or control which was in use for any purpose related to YOUR operations at any time from January 1, 2016 to the present, whether still in use or not,
   [2] owned, possessed, and/or used by any of YOUR employees, agents, independent contractors, and agents at any time from January 1, 2016 to the present, whether still in use or not,
   [3] within YOUR possession, custody or control, whether still in use or not, that was used to access, review, research and/or click on SATMODO's website or paid advertisements,
   including for each device:
       a. A description of the device;
       b. The model and serial number;
       c. The time period between January 1, 2016 to the present that the device was in use;
       d. All users for the period referenced above and
       e. Locations where the equipment was located during the same period;
       f. If the device is no longer in use, the last person to have custody.

Special Interrogatory 4 states: If you are aware of or contend that any COMPUTING DEVICE(s) not within YOUR possession, custody or control were used to access, review, research and/or click on SATMODO's website or paid advertisements from the time period between January 1, 2016 to the present, identify the each [sic] device, including… [a.-f. above, and adding as subpart (b): "Who YOU believe or contend owned, operated, or used the device"].

[3] Special Interrogatory 5 states: "List all Operating Systems (including but not limited to Unix, Windows, DOS, Linux, Mac OS X, Android, iOS, and PDA OPERATING SYSTEMS) installed on any computer or mobile device used by YOU from the time period between January 1, 2016 to the present, the specific equipment the Operating System was installed on and the period during which it was installed on the specific equipment."

[4] Defendants' portion of the Joint Statement indicates that a list of current and former employees and independent contractors was provided. ECF No. 51 at 12-13. The motion to compel further response to Special Interrogatories 8 and 9 is therefore DENIED AS MOOT.

4

Plaintiff argues that the responses and supplemental responses fail to provide the information sought and are not verified. ECF No. 51-1 at 6. Plaintiff also presents some concern that Defendants' responses provided thus far are unverified; Defendants have not responded to or otherwise confirmed compliance with an evidence preservation letter sent in September 2016, and deposition testimony has revealed that some company computers/phones have been replaced or otherwise altered, or that there are company phones or computers that do not appear on the Winter List, rendering verified responses to the interrogatories of particular importance. ECF No. 51-1 at 7, 9; ECF No. 53 at 2-3; Ex. 1.[5]

Defendants do not appear to genuinely dispute that the responses do not provide all the information requested, nor do Defendants argue the requests are irrelevant. Defendants argue the requests are disproportionate to the "narrow scope of discovery." ECF No. 51 at 4, 51-1 at 17-18. Defendants also appear to believe that Plaintiff's requests are seeking to find the "Device ID" assigned by ClickCease[6] and explain that it will not be on or in the device. *Id.*

The Court agrees that the ClickCease assigned "Device ID" will not be revealed as a result of the device inspection as currently proposed by Plaintiff, but also does not believe that was the purpose of the Plaintiff's interrogatories. Plaintiff's special interrogatories appear designed to identify the universe of devices at issue and by doing so, obtain a list of devices to inspect—one that can presumably be used to confirm the device identified by model and serial number is the one that is subsequently inspected. *See* ECF No. 51-1 at 3.

---

[5] Defendants' objections to the Supplemental Declaration of Scott J. Ivy in Support of the Motion for Determination of Discovery Dispute No. 1 are OVERRULED.

[6] ClickCease is a computer program that "tracks each and every click on Satmodo's paid advertisements and is able to not only obtain and record the Internet Protocol ("IP") addresses, operating system, and browsers of the devices used to click on the ads, but is also capable of determining whether those clicking on the ads are engaging in fraudulent clicking and/or using bots or non-human means to continuously click on the ads." ECF No. 51-1 at 3.

5

Defendants rely on the guidelines provided by Judge Battaglia, which state that the "scope of discovery is narrow." Judge Battaglia's guidelines outline several factors to evaluate whether discovery is proportionate to the needs of the case: (1) the needs of the case; (2) the importance of the issues at stake in the litigation; (3) the parties relative access to relevant information; (4) the parties resources; (5) the importance of the discovery in resolving the issues; and (6) whether the burden or expense of the proposed discovery outweighs the likely benefit. *Disclosure and Discovery Under the Federal Rules of Civil Procedure*, Anthony J. Battaglia (Jan. 2016), p. 43. These factors largely match the factors of Rule 26 set forth above. Fed. R. Civ. P. 26(b)(1).

In looking at the factors relevant to discovery as outlined by Judge Battaglia and Rule 26, this Court finds they weigh in favor of discovery. Particularly pertinent here: Defendants have sole and exclusive access to their devices and the burden associated with obtaining this information is minimal, this information is readily available for most devices within "Settings."

The Plaintiff's interrogatories are properly calculated to obtain relevant information proportional to the needs of the case, and the concerns regarding the completeness and accuracy of the Winter List provided by Defendants to date have merit. *See United Factory Furniture Corp. v. Alterwitz*, 2:12-CV-00059-KJD-VC, 2012 WL 1155741, at *3 (D. Nev. Apr. 6, 2012) ("Litigants owe an 'uncompromising duty to preserve' what they know or reasonably should know will be relevant evidence in a pending lawsuit even though no formal discovery requests have been made and no order to preserve evidence has been entered." (citations omitted)). Plaintiff's motion to compel is **GRANTED**. Defendants must provide a verified response to Interrogatories 1-5 by no later than **August 10, 2018**.

### B. Demand for Inspection

This dispute largely centers on the Plaintiff's request for inspection of the Defendants' computers and other electronic devices. Plaintiff argues that an inspection is the only way for Plaintiff to "determine what other IP addresses or proxy servers may have been used by each person's device during the relevant time period and/or if the devices

have been modified, altered or 'wiped clean' prior to determining the currently used IP address." ECF No. 51-1 at 9.

Defendants argue that the requests for inspection are overbroad and intrusive in that they seek to copy the "entire contents of the computers of Defendants and their employees." *Id.* at 17. Defendants propose an alternative "live test" where Defendants will use their devices to click on a landing page set up for the ClickCease software to identify the device in question in order to see if the Defendants' devices match the device IDs assigned to offending click-fraud participants. *Id.* at 18-19; ECF No. 51-6 at 4-5. Defendants also point to their own investigation based on a list of allegedly fraudulent clicks provided by Plaintiff, and state that investigation by their expert, Mr. Peter Kent, working off the IP addresses compiled in the Winter List, revealed only 20 clicks that arise from IP addresses associated with Defendants. ECF No. 51-1 at 15-16, 18; ECF No. 51-6 at ¶ 4. Finally, Defendants again rely on Judge Battaglia's guidelines, which direct that the scope of discovery is narrow in arguing the request for inspection is overbroad.

Where, as here, "a defendant allegedly used the computer itself to commit the wrong that is the subject of the lawsuit, certain items on the hard drive may be discoverable." *Calyon v. Mizuho Securities USA Inc.*, 07 CIV 02241 RODF, 2007 WL 1468889, at *4 (S.D.N.Y. May 18, 2007). Imaging the device is also a means for preserving evidence "since electronic evidence can easily be erased and manipulated, either intentionally or unintentionally (by overwriting through continued use of the computer)." *Id.* at *3; *see also, United Factory Furniture Corp. v. Alterwitz*, 2:12-CV-00059-KJD-VC, 2012 WL 1155741, at *3 (D. Nev. Apr. 6, 2012) (granting mirror imaging of defendant's computer to preserve evidence).

Balancing the relevant factors weighs in favor of permitting the inspection: Defendants have sole and exclusive access to devices and control over the information they share; inspection of the devices could resolve the issues of the case; and the Court finds that any burden and expense associated with the discovery is proportionate to the needs of the case, will be borne primarily by the Plaintiff, and will be important to the resolution of

the issues. For example, inspection of the devices could reveal evidence of the click-fraud that Plaintiff alleges; or that there is no evidence of click-fraud and Plaintiff is on a proverbial goose-chase; or, possibly, that the devices have been modified/wiped. Each of these outcomes has importance to the continuation and resolution of this case.

The Court agrees with Plaintiff that inspection of the devices is warranted under the circumstances of this case and, in that regard will **GRANT IN PART** the motion to compel. However, the Defendants have raised valid concerns regarding what information may be obtained during an inspection. Defendants' expert, Mr. Kent, testifies that the information Plaintiff seeks may not be available in the devices themselves, regardless of inspection. ECF No. 51-6 at 3, ¶¶ 7-11. Accordingly, the Court will exercise its discretion to fashion an inspection protocol intended to permit discovery of relevant information if it can be obtained while protecting the privacy and business interests of the Defendants and their employees. *See Playboy Enterprises, Inc. v. Welles*, 60 F. Supp. 2d 1050, 1054 (S.D. Cal. 1999) (ordering discovery subject to protocol set forth by the court); *Balboa Threadworks, Inc. v. Stucky*, No. 05-1157-JTM-DWB, 2006 WL 763668, at *5 (D. Kan. Mar. 24, 2006) (ordering the parties to agree upon a search protocol for imaged computer hard drives in copyright case); *Calyon v. Mizuho Securities USA Inc.*, 2007 WL 1468889, at *4 (examining several cases where independent experts were appointed, and ultimately ordering the parties' own experts to agree and collaborate on a search protocol); *Antioch Co. v. Scrapbook Borders, Inc.,* 210 F.R.D. 645, 653 (D. Minn. 2002) (appointing independent expert to image devices and search pursuant to discovery requests).[7]

The Court hereby **ORDERS** inspection to proceed, subject to the following instructions and guidelines:

1. Defendants shall make available the devices, including laptops or desktops, smart

---

[7] Because the Court believes that any inspection seeking evidence of click-fraud will not require access to any personal or business information but rather will be more focused on metadata and installation history, the Court does not find the appointment of an independent computer expert necessary under the facts of this case.

phones, and tablets used by any employee for business purposes at the <u>San Diego office</u> location during the relevant time period for on-site inspection by the Plaintiff's experts. Devices of independent contractors are excluded from inspection. Defendants' expert is to be present to supervise the inspection. The experts are to confer to find a mutually convenient date and time for the on-site inspection within 30 days of this order.

2. The on-site inspection must permit the Plaintiff's expert to gather and/or confirm:
    a. The model and serial number of the device;
    b. The operating system(s) currently installed;
    c. The browsers currently used/installed;
    d. The IP address(es) presently associated with the device.
3. During the on-site inspection, the Plaintiff's expert is to be provided access sufficient to determine if further forensic analysis would reveal:
    a. Whether the devices are capable of/did convey and record IP addresses other than those previously provided by Defendants during the on-site inspection;
    b. Any operating system(s) un-installed/reinstalled between January 2016 and the present;
    c. Any browsers un-installed/re-installed between January 2016 and the present;
    d. Whether the device used any proxy servers or other IP masking devices/programs between January 2016 and the present;
    e. Any information that the device has been "wiped" since September 2016.
4. If the Plaintiff's expert determines that it cannot obtain any of the information in 3(a)-(e) within a reasonable time during an onsite inspection, then the Plaintiff's expert may image the devices from the San Diego office and employees (desk tops, lap tops, smart phones, and tablets) for off-site forensic analysis.

///

5. If the inspection proceeds to off-site forensic analysis, the following guidelines SHALL be followed:
    a. The imaged devices shall be designated HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY under the protective order (ECF No. 44).
    b. Forensic analysis by Plaintiff's expert is limited to the review of data to evidence click-fraud. The expert may not access business or personal information on the devices such as emails, call histories, financial plans, or business documents. This is not to say documents cannot be obtained from the devices; however any material obtained and/or printed must be demonstrably related to pursuit of evidence click-fraud, e.g., whether the device was "wiped," installation or reinstallation of browsers/operating systems, use of proxy servers, etc.
    c. A copy of any documents obtained/printed from any device during off-site forensic inspection must be provided to counsel for Defendants at the conclusion of the analysis. Defendants' counsel shall have 10 days from receipt of the documents to challenge the use of any document it believes contains trade secrets, proprietary information, or is privileged.[8] Defendants shall then include any challenged document on a privilege log. If the Plaintiff's counsel believes any challenge lacks merit, the parties shall submit a Joint Motion for Determination of Discovery Dispute regarding the documents at issue.

Failure to follow the guidelines set forth in this order or any bad faith conduct by either side during the inspection process may subject the parties, their counsel, and/or their experts, in both their personal and business capacities, to the imposition of discovery sanctions.

---

[8] Based on the parameters set forth regarding the types of documents the Plaintiff's expert may access (primarily metadata), the Court does not anticipate any such challenges.

10

3:17-cv-192-AJB-NLS

Within **90 days** of this order, and sooner if the inspection and analysis allows, the parties are to submit a status report to the Court, outlining the results of the onsite inspection and, if it was deemed necessary, the offsite forensic analysis, from the San Diego site. The parties are to include their respective positions and proposals on whether or how to proceed with inspection from other facilities, and any proposed amendment to the Scheduling Order. The Court hereby extends the fact discovery cut off to **November 26, 2018**. The status report should not exceed 10 pages, allotting 5 pages to each party. The Court will set a telephonic status conference if appropriate, or issue a written decision on how to proceed.

### C. Requests for Production

Finally, Plaintiff moves to compel production of documents in response to 3 requests for production ("RFP") propounded to each Defendant, Whenever Communications and Ms. Blanco. ECF No. 51 at 19.

### 1. Request for Production No. 1

RFP No. 1 to each Defendant asks for documents relating to "any attempts to access, review, research, interact with and/or click on SATMODO's website or paid advertisements." ECF No. 51 at 19. Defendants' responses indicated they "would not permit inspection" and that Defendants would make "best efforts to identify clicks in dispute." *Id.* at 20.

Plaintiff argues that the inquiry is relevant to the case and production should be compelled. Defendants counter that they did not participate in any fraudulent conduct and that Plaintiff "provides no suggestion [of] what such a document might be."

The Advisory Committee Notes to Rule 34 explain:

> …it has become increasingly difficult to say that all forms of electronically stored information, many dynamic in nature, fit within the traditional concept of a "document." Electronically stored information may exist in dynamic databases and other forms far different from fixed expression on paper. Rule 34(a) is amended to confirm that discovery of electronically stored information stands on equal footing with discovery of paper

> documents. The change clarifies that Rule 34 applies to information that is fixed in a tangible form and to information that is stored in a medium from which it can be retrieved and examined. At the same time, a Rule 34 request for production of "documents" should be understood to encompass, and the response should include, electronically stored information unless discovery in the action has clearly distinguished between electronically stored information and "documents."

Fed. R. Civ. Proc. 34 advisory committee notes to 2006 amendments.

Items such as a browser history may contain "information that is stored in a medium from which it can be retrieved and examined" that may reflect attempts to access Satmodo's website. While it is unlikely that a browser history would store information for the length of time in question and the Court does not find a browser history to be the type of information required to be electronically preserved (*see* Fed. R. Civ. P. 37(e)), it may contain relevant data or evidence of recent searches. The Court will not require Defendants to produce an unredacted print outs of browser histories as that would be intrusive, contain irrelevant information, be disproportionate to the needs of the case, and unlikely to yield any information due to the length of time browser histories are generally saved. However, it is appropriate that Defendants conduct a search for information stored in locations such as the devices' browser histories for "Satmodo" and produce any results. Plaintiff's motion to compel is therefore **GRANTED IN PART**.

### 2. Requests for Production 5 & 6 and 9&10

Plaintiff's portion of the Joint Memorandum only addresses RFP No. 1. ECF No. 51-1 at 10. However, the Joint Statement also includes RFP Nos. 5 and 6 to Ms. Blanco and RFP Nos. 9 and 10 to Whenever Communications.

These remaining requests are identical: RFP Nos. 5 and 6 to Ms. Blanco match RFP Nos. 9 and 10 propounded to Whenever Communications. ECF No. 51 at 18-22. RFP Nos. 5/9 asks for a list of internet service providers and RFP Nos. 6/10 requests "documents sufficient to identify any and all IP addresses used by or assigned to YOU from September 1, 2016 to the present." ECF No. 51 at 20-21. Defendants' initial responses indicate that

they will provide lists, and the responses to motion to compel indicate that lists have been produced. *Id.*

Because Defendants represent that responses have been provided and Plaintiff does not identify these RFPs in the Joint Motion, the Court will **DENY AS MOOT** the motion to compel further responses to these RFPs.

## IV. CONCLUSION

Plaintiff's motion to compel is **GRANTED IN PART** and **DENIED IN PART** consistent with the terms of the this order.

**IT IS SO ORDERED.**

Dated: July 20, 2018

Hon. Nita L. Stormes
United States Magistrate Judge